**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch**

Civil Action No. 12-cv-02863-RPM

DIANE C. BORTLES

    Plaintiff,

v.

BOULDER VALLEY SCHOOL DISTRICT NO. RE 2,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Plaintiff Diane Bortles was employed by Defendant Boulder Valley School District No. RE 2 ("the District") for six years—from the beginning of the 2003-04 school year until the end of the 2008-09 school year. In her role as a paraeducator, Bortles served as a school nurse, a special education aide, and a teaching assistant in a "KinderCare" classroom. She was 60 years old at the time Defendant terminated her employment.

Plaintiff claims that Defendant terminated her employment because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1). She advances that claim on the basis of disparate treatment and disparate impact. The District has moved for summary judgment of dismissal, claiming that its actions were taken for legitimate, non-discriminatory reasons.

The following facts are material and not in genuine dispute. Bortles worked for the City of Boulder from 1977 until her retirement in 2003. She then applied for employment as a

paraeducator at Lafayette Elementary School.  She indicated on her application that she had retired from the City.  However, when the District hired her, it incorrectly coded her application information as stating that she had been laid off.  As a consequence, the District did not know Bortles was a retiree with the Public Employee Retirement Association ("PERA").  From 2003 to 2008, the District provided Bortles employee-covered health benefits, even though such benefits are not available to PERA retirees.[1]

The District learned of Bortles' retiree status as a result of a PERA audit in June 2008.  At that time, Ms. Bortles was employed at the Lafayette Elementary School in a 0.375 Full Time Equivalent ("FTE") position as an "intensive" special education paraprofessional and a 0.125 FTE position as a paraprofessional in the KinderCare program, for a total of 0.5 FTE.  Before the 2008-09 school year began, the District informed Bortles that it would no longer provide her health insurance because she was a PERA retiree.  Bortles remained eligible to receive insurance through PERA itself, but PERA insurance is more expensive and less comprehensive than the insurance the District provides.  Non-retirees in the District working 0.5 FTE or more receive health insurance from the District.

The District also changed its policy pertaining to the retention of PERA retirees during the 2008-09 school year.  Under Colorado law, individuals receiving PERA benefits may continue to work for a PERA employer after retirement for up to 110 days or 720 hours per

---

[1] The District maintains that benefits are not available to PERA retirees under its agreement with the Boulder Valley Paraprofessionals Association ("BVPA"). Bortles disputes that assertion. [*See* Doc. 23 at 3-4.] She claims that the Agreement does not even address employees who are PERA retirees because such employees are not within the bargaining unit covered by the Agreement. Rather, the Agreement covers only "regularly employed personnel," which excludes retirees who are employed on 110-day contracts. Instead, Bortles maintains that the District has unilaterally decided to adopt a policy of not providing health insurance to PERA-retiree employees. This dispute is immaterial—whether the District's policy is the result of the BVPA Agreement or a unilateral decision by the District makes little difference to Bortles' claim. It is the policy itself she challenges, and either way the District is responsible for it.

year without any reduction in their PERA benefits. Colo. Rev. Stat. § 24-51-1101 (2008). Before 2009, the District would allow PERA retirees to work multiple years on 110-day contracts each year. This practice was expensive because many of the retirees commanded high salaries based on their seniority and the District's salary schedule.

In January 2009, the District announced that it would allow teachers and licensed professionals who were PERA retirees only a single year of post-retirement employment, with limited exceptions. The District justified its decision in a few ways. First, it stated that the decision was made to save money in a time of budget difficulty. The District generated comparative data showing that hiring a new teacher or licensed professional versus retaining a PERA retiree in the same position would result in substantial savings. [*See* Doc. 15, Ex. H.] Second, it said that during the District's recent collective bargaining process, current educators requested that the District increase the number of regular teaching contracts and reduce the number of limited contracts such as those given PERA retirees. Third, the District sought to develop a new workforce of teachers.

Initially, the District applied this change to teachers and other licensed employees only; it sent affected employees notice of the change by letter on January 22, 2009. Thereafter, the District decided, in the interest of consistency and fairness, to implement the new policy for all PERA retirees in the District, including paraprofessionals like Bortles. All of the affected 122 retirees working in the District at the time the policy changed, both licensed and non-licensed employees, were over the age of fifty; 63 percent of them were over the age of 60.

The District sent Bortles a letter on March 11, 2009 informing her of the policy change, the necessary implication being that it would not offer her a new 110-day contract for the 2009-2010 school year. [Doc. 15, Ex. I.] In the letter, the District again claimed that it was

making the change due to budget constraints. However, the District had not generated data showing the relative cost of retaining a PERA retiree in a non-licensed/classified position versus making a new hire.

For the 2009-2010 school year, Lafayette Elementary hired a 47-year-old woman to replace Ms. Bortles in her 0.375 FTE intensive special education position. The school hired a 43-year-old woman to replace Bortles in her redistributed Ms. Bortles' 0.125 FTE position in the KinderCARE program. Both replacements were current employees and were not PERA retirees. As such, they received health benefits.

Bortles filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in December 2009, alleging that the District's refusal to provide her health benefits during the 2008-09 school year and its decision not to offer her a 110-day contract for the 2009-2010 school year constituted age discrimination. [*See* Doc. 15, Ex. L.] In its response, the District again explained that it changed its policy as to unlimited 110-day contracts for PERA retirees to save the District money. Specifically, the District stated that the new policy would have saved approximately $1.7 million if it had been in effect across all employee groups during the preceding three years. [*See* Doc. 15, Ex. M.] Although the District's data showed substantial cost savings as a result of employing newly-hired non-retirees as teachers/licensed employees, it also showed that it cost $1226.10 more to employ non-retirees in classified/non-licensed positions than it cost to employ PERA retirees. In Ms. Bortles' case, specifically, it actually cost the District $4877 more to employ the non-retiree employees who replaced her.[2]

---

[2] It cost District $15,561 to employ the non-retiree in the intensive special education paraeducator position, while it cost the District $10,737 to employ Bortles in the same position. It cost the District $2947 to employee the non-

4

The District also explained in its EEOC response that it was required by law to pay 13.9% of the retiree's salary to PERA, even though the payment did not increase or extend the retiree's retirement benefit. [*See* Doc. 15, Ex. L.] Because the PERA payment did not, in the District's view, provide any value to the retiree, the District contended that it did not make sense to continue such a practice.

The EEOC issued Bortles a right-to-sue letter on July 31, 2012. Bortles filed the instant Complaint on October 30, 2012.

The District argues as a threshold matter that Bortles is barred from basing her age discrimination claim on its decision to discontinue her health-insurance benefits when it learned she was a PERA retiree, for two reasons: (1) the claim was never raised in her EEOC complaint, and (2) even if it was, it would have been time barred. In her EEOC complaint, Bortles stated that the two women she was replaced by "received full-benefits [sic]. I did not receive benefits as a retiree employee." [Doc. 25, Ex. R at 3.] Even if Bortles' allegation is oblique, it "[identifies] the parties" and "[describes] generally the action or practices complained of," 29 C.F.R. § 1601.12(b) (EEOC regulations), such that the District could discern that Bortles was accusing it of age discrimination because of its action. *Cf. Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1196 (10th Cir. 2004) ("[T]he central purposes of the administrative exhaustion requirement have clearly been met in this case. There is no doubt that Ruhrpumpen could discern from the charges filed that the plaintiffs were accusing the company of age discrimination . . . ."). Thus, the Court concludes that

---

retiree in the KinderCare position, while it cost the District $2914 to employ Bortles in the same position. [*See* Doc. 23, Ex. 11.]

5

Bortles should not be precluded from basing her claim on the District's discontinuation of her health benefits because she failed to raise the issue with the EEOC.

Timeliness is another issue. Under 29 U.S.C. § 626(d)(1)(A), an EEOC charge must be filed within 180 days after the alleged unlawful practice occurred. According to Bortles, she first became aware that the District was discontinuing her health benefits at the start of the 2008-09 school year, which means around August or September 2008. [Doc. 23 at 3.] She filed her EEOC complaint on December 5, 2009, approximately one year and a few months later. [Doc. 25, Ex. R.] That is clearly outside of the 180 day window. Therefore, Bortles' health-benefits-discontinuation theory was not timely raised before the EEOC, and it may not be raised now.

Bortles attempts to make her disparate treatment claim in two ways: under the framework established in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); and "directly, by presenting direct or circumstantial evidence that age was a determining factor in the discharge"—an alternative method of establishing an ADEA claim recognized by the Tenth Circuit. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 558, 560 (10th Cir. 1996).

The *McDonnell-Douglas* framework requires a plaintiff to first establish a prima facie case of discrimination. If the plaintiff makes that case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its employment action. If the employer succeeds, the burden again shifts back to the plaintiff to prove that the legitimate reason offered by the defendant is actually a pretext for discrimination. *See* 411 U.S. at 802.

A prima facie case of disparate treatment age discrimination requires the plaintiff to show that he or she was: (1) within the protected age group (40 or older); (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person.

*See Greene*, 98 F.3d at 558; *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106 (10th Cir. 2007). The District concedes that Bortles has satisfied elements two and three, but contends she has not established the first or fourth.

According to the District, Bortles cannot establish the first element of her prima facie case because she claims she was discriminated against as a PERA retiree, and yet retirement status is not an age-based protected class. [*See* Doc. 15 at 8.] However, the only question at element one is whether the plaintiff is 40 or older. In that regard, Bortles, who was 60 at the time her employment ended, clearly qualifies.

As to element four, the District contends that "when a plaintiff is replaced by someone over forty, this is an 'extraordinary' situation and requires plaintiffs to provide additional evidence of discriminatory age-related animus for a *prima facie* case." [Doc. 15 at 9.] But the cases cited by the District do not support that position. In *Greene*, 98 F.3d at 559, the Court made clear that, under applicable Supreme Court precedent, a plaintiff is not required to show that he or she was replaced by someone under forty to make out a prima facie case. At the same time, the Supreme Court has said that an inference of illegal discrimination "cannot be drawn from the replacement of one worker with another worker <u>insignificantly younger</u>," citing the replacement of a 40-year-old by a 39-year-old as an example. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Courts have taken that statement to require a plaintiff to show that his replacement was "substantially younger." *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1166 (10th Cir. 2000) ("[B]ecause plaintiff's replacement was only two years his junior—an obviously insignificant difference—the necessary inference of discrimination was precluded, and he failed to establish his prima facie case.") Though the standard is not exactly clear, age differences of ten or more years

7

have generally been held to be sufficiently substantial.  *See, e.g., Hartley v. Wisc. Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997) (holding that court "considers a ten-year difference in ages (between the plaintiff and her replacement) to be presumptively 'substantial' under *O'Connor*"); *Balut v. Loral Elec. Sys.*, 166 F.3d 1199 (2d Cir. 1998) (replacement of 57-year old with 47-year old sufficient).  Under that prevailing view, Bortles has clearly satisfied element four, as she was replaced by employees who were seventeen and thirteen years younger than her, respectively.

Accordingly, Bortles has established a prima facie case of age discrimination.  The District has also advanced legitimate, non-discriminatory reasons for its actions, namely:  (1) cost savings; (2) being consistent and fair to all PERA retirees by applying the policy to all employment classes; (3) future workforce development; (4) responding to bargaining unit concerns; and (5) getting value for its retirement contributions.  Thus, the burden shifts back to Bortles to establish pretext.  To do so, Bortles must offer evidence

> revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason."

*Garrett v. Hewlett-Packard Corp.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

The District recognizes that it "did not specifically analyze data and determine that there would be significant cost-savings as to paraeducators or as to Bortles' specific position" before deciding to apply its policy change to those employees.  [Doc. 25 at 10.]  However, it is also undisputed that:  (1) the District had data showing that applying the policy to teachers and licensed professionals would save a substantial sum of money; and (2) that it therefore

assumed, without generating additional data, that savings would also be achieved by extending the policy to all District employees who were PERA retirees. The District's assumption turned out to be wrong, as the data it generated during the EEOC proceeding showed. This certainly establishes a weakness or implausibility in the District's budget-saving justification, but it does not automatically render the District's justification unworthy of belief, nor does it support an inference that the District was not actually motivated by cost savings in making the policy change. Bortles does not dispute that the District's assumption was genuinely held at the time; she only emphasizes that it was ultimately wrong. And while Bortles criticizes the District for not generating specific data showing the budget effects of applying the policy to paraprofessionals, that is a hindsight complaint regarding the District's deliberative process, not an illumination of purposeful discrimination. Given the data the District already had on teachers and licensed professionals, it was not wholly unreasonable for it to assume that similar savings would accrue by applying the policy District-wide. Accordingly, a rational fact-finder could not conclude that the District's cost-saving justification is unworthy of belief.

As to the District's second justification, Bortles maintains that she has "presented a significant amount of evidence indicating that the Defendant has not maintained a practice of applying the same policies across-the-board to all employee groups." [Doc. 23 at 18-19 (emphasis in original).] That evidence consists of showing a number of employment policies and rules that the District applies to teachers and licensed employees but not to paraeducators. [*See* Doc. 23, Ex. 3 ¶ 5(a)-(o).] There are two problems with Bortles' argument. First, the District does not say that it applies employment policies universally 100 percent of the time; rather, it says that it attempts to do so when possible and appropriate, and

9

it offers examples of its own showing that some District policies are in fact universal. Thus, the existence of some policy differences across employee groups does not create a genuine dispute of fact as to the District's general drive towards policy consistency. Second, showing that some inapplicable District policies are implemented differently across employee groups does not support a reasonable inference that the District was not actually motivated by consistency and fairness here, particularly because consistency and fairness were the practical effects of the District's decision. Accordingly, a rational fact-finder could not conclude that the District's uniformity justification is unworthy of belief.

Third, Bortles contends that the District's stated interest in "supporting the development of a new workforce team" is weak and implausible because the District did not articulate workforce development as a justification in the EEOC proceeding and because the District only referred to "support[ing] the development of our new workforce of <u>teachers</u>" in a May 2008 e-mail from Becky McClure, the District's Director of Human Resources. [Doc. 23 at 18 (quoting Doc. 23, Ex. 7, with emphasis).] The existence of the May 2008 e-mail, which was written before the EEOC proceeding and this action, belies the notion that developing a new workforce team is a suspicious post-hoc rationale. In addition, as of May 2008, the District was only considering the policy change for teachers and other licensed professionals, and so it makes perfect sense that its justification at the time would not include paraprofessionals. Moreover, the District's interest in workplace development applies just as rationally to paraprofessionals and other non-licensed employees as it does to teachers. There is nothing weak or implausible about this justification.

Bortles has identified serious deficiencies with the District's justifications concerning collective bargaining and PERA retirement payments. But the District's two weak

arguments do not necessarily mandate a finding of pretext. As the Tenth Circuit Court of Appeals has explained:

> However the plaintiff may choose to demonstrate pretext, we have definitively rejected a "pretext plus" standard; in order to survive summary judgment, a plaintiff generally need not provide affirmative evidence of discrimination beyond the prima facie case and evidence that the employer's proffered explanation is pretextual. *Jaramillo v. Colo. Judicial Dep't,* 427 F.3d 1303, 1312 (10th Cir. 2005); *see also Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117, 1135-36 (10th Cir. 2003) ("The plaintiff need not show both that the defendant's reasons were a pretext *and* that the real reason was discrimination-the fact of pretext alone may allow the inference of discrimination."). We do not always require actual evidence of discrimination because, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.... Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Reeves,* 530 U.S. at 147, 120 S. Ct. 2097.[9]
>
> However, it is not *always* permissible for the factfinder to infer discrimination from evidence that the employer's explanation is unworthy of belief. "[I]f the record conclusively revealed some other, nondiscriminatory reason for the employer's [adverse employment] decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," the fact that the employer's explanation was unworthy of belief would no longer be sufficient to create an inference of discrimination. *Id.* at 148, 120 S. Ct. 2097. The same reasoning applies to a plaintiff's attempts to show pretext through evidence of differential treatment; if the employer's differential treatment of similarly-situated employees is "trivial or accidental or explained by a nondiscriminatory motive," such treatment is insufficient to create an inference of discrimination. *Kendrick,* 220 F.3d at 1232.

*Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007). While the District's union pressure and PERA payment justifications are weak, a factfinder could not reasonably infer that they were a pretext <u>for illegal discrimination</u>, as the record conclusively shows that the District took its actions for the plausible budgetary and organizational justifications discussed above.

Accordingly, Bortles has failed to show that the District's legitimate, nondiscriminatory reasons for its policy change were pretextual.

Bortles also advances her disparate treatment claim on the basis of "direct evidence." [*See* Doc. 23 at 19-20.] The District contends that this argument fails because the District's decision was based on Bortles' status as a retiree, not her age. According to the Tenth Circuit Court of Appeals:

> Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. ——, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119 (2009). In other words, we must determine whether age was a "but-for" cause, *id.,* or "the factor that made a difference," *Jones v. Okla. City Pub. Sch.,* 617 F.3d 1273, 1277 (10th Cir.2010); *cf.* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 41, at 265 (5th ed. 1984) ("An act or omission is not regarded as a cause of an event if the particular event would have occurred without it.").

*Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011).

The Supreme Court has explained "that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age," even if the motivating factor is "empirically correlated with age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609, 611 (1993). Thus, in *Hazen Paper*, the Court held that an employment termination based on the plaintiff's advanced pension status was not age-based discrimination, reasoning that:

> Pension plans typically provide that an employee's accrued benefits will become nonforfeitable, or "vested," once the employee completes a certain number of years of service with the employer. . . . On average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee's age is analytically distinct from his years of service. An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, . . . may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while

12

>ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."
>. . .
>[A] decision by the company to fire an older employee solely because he has nine-plus years of service and therefore [his pension benefits are] "close to vesting" would not constitute discriminatory treatment on the basis of age. The prohibited stereotype ("Older employees are likely to be ___") would not have figured in this decision, and the attendant stigma would not ensue. The decision would not be the result of an inaccurate and denigrating generalization about age . . . .

*Id.* at 611-12. However, discrimination based on a status correlated with age can violate the ADEA where it is shown that status served as a "proxy for age." *Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 143 (2008). To be a "proxy for age," the classification must be based on stereotypes the ADEA seeks to eliminate, such as the assumption that older workers are less productive or less competent than younger workers. *Id.* at 146-47; *Hazen Paper*, 507 U.S. at 611.

Here, the District took its action based on Plaintiff's status as a PERA retiree, not because of her age. Under PERA, retirement status is more closely correlated with age than the pension plan was in *Hazen*, because PERA requires that a state employee be at least 50 years old (and thus within the ADEA's protected class) and have a given number of years of service to become eligible for benefits. *See* Colo. Rev. Stat. § 24-51-602(1)(a) (eligibility table). However, there is nothing in the record to suggest that the District's decision to limit PERA retirees to one year of post-retirement service was the result of ageist stereotypes, such as "older people can't keep up with the kids," or "older people have trouble with new classroom technologies." Bortles alleges that the District's attitude "toward retirees involves negative stereotypes and assumptions about older people and older employees" [Doc. 23 at 20], but she has no record support for that statement. In the absence of direct evidence that the District's decision was actually motivated by discriminatory animus regarding Bortles'

age, it cannot be said that age was "the factor that made a difference," *Jones*, 617 F.3d at 1277. Therefore, Bortles' disparate treatment claim on the basis of direct evidence fails.

The framework for a disparate impact claim is similar to *McDonnell-Douglas*: first, the plaintiff must establish a prima facie case by identifying a specific employment practice that is responsible for observed statistical disparities; then, the burden shifts to the employer to show that its policy was based on a reasonable factor other than age; at which point the burden reverts to the plaintiff to show that the policy is unreasonable. *Smith v. City of Jackson*, 544 U.S. 228, 240-42 (2005); *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1200 (10th Cir. 2006).

Assuming that Bortles has established her prima facie case, she has nonetheless failed to show that the District's asserted basis for the policy is unreasonable. As discussed at length above, the District has offered evidence showing that it initially implemented its policy to reduce costs and develop its workforce of teachers and licensed professionals, and that it subsequently extended the policy to all PERA retirees to be fair and consistent. Those are all reasonable factors other than age. *Cf. Pippin*, 440 F.3d at 1201 ("Corporate restructuring, performance-based evaluations, retention decisions based on needed skills, and recruiting concerns are all reasonable business considerations."). While there may have been other reasonable ways for the District to achieve its goals, the one selected was not unreasonable. *See id.* at 1200-01 ("The test is not whether there were other more narrowly tailored ways for the employer to achieve its legitimate business goals. . . . Instead, the employee must show that the method selected was unreasonable.") (citation omitted).

Upon the foregoing, it is

15

ORDERED that Defendant's Motion for Summary Judgment is granted. The Clerk will enter judgment dismissing this civil action.

Dated: January 6, 2014.

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch
Senior District Judge